USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 7/28/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
THE BRONX DEFENDERS, THE LEGAL AID  :
SOCIETY, BROOKLYN DEFENDER SERVICE, :
QUEENS LAW ASSOCIATES NOT FOR PROFIT :
CORPORATION d/b/a QUEENS DEFENDERS, :  20-CV-5420 (ALC)
NEIGHBORHOOD DEFENDER SERVICE OF :
HARLEM, and NEW YORK COUNTY DEFENDER : **OPINION & ORDER**
SERVICES, :
 :
                       **Plaintiffs,** :
 :
   -against- :
 :
THE OFFICE OF COURT ADMINISTRATION, and :
LAWRENCE K. MARKS, *in his official capacity as* :
*Chief Administrative Judge of the Unified Court System*, :
 :
                       **Defendants.** :
------------------------------------------------------------------------ x

**ANDREW L. CARTER, JR., District Judge:**

      Plaintiffs The Bronx Defenders, Legal Aid Society, Brooklyn Defender Service, Queens Law Associates Not for Profit Corporation, Neighborhood Defender Service of Harlem, and New York County Defender Services (collectively, "Plaintiffs") bring this action against the Office of Court Administration and Lawrence K. Marks (collectively, "Defendants") alleging violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §12132 ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a) ("Section 504"); and the Fourteenth Amendment. Specifically, Plaintiffs allege that the New York City Criminal Court's plan to commence limited in-person appearances does not adequately accommodate people with protected disabilities under federal law.

      Plaintiffs filed a motion for an *ex parte* Temporary Restraining Order to halt in-person appearances in New York City Criminal Court, which the Court denied. The Court Ordered

1

Defendants to Show Cause why the Court should not enter a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) that would halt in-person appearances in New York City Criminal Court pending further proceedings.  After briefing and a Show Cause hearing, the Court hereby **DENIES** Plaintiffs' motion for a preliminary injunction.  The case is **DISMISSED**.

## INTRODUCTION

Plaintiffs bring serious allegations of risks that their attorneys and clients face in returning to courthouses during a global pandemic.  In the midst of the ongoing, unprecedented COVID-19 pandemic, court systems face the difficult task of slowly and safely restarting in-person operations.  Plaintiffs, New York City's public defender organizations, allege that New York City Criminal Court's reopening plan requires unnecessary in-person appearances without adequate accommodations for people with medical vulnerabilities, which puts Plaintiffs' staff and clients at serious risk from COVID-19 and violates federal law.  Federal courts, "anxious though [they] may be to vindicate and protect federal rights and federal interests, always endeavor[] to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44.  This Court does not, and indeed cannot, dictate if, when, and how state criminal courts reopen or schedule in-person appearances.  To do so would violate fundamental principles of comity and federalism, and would result in federal supervision of state procedures and proceedings in direct contradiction of *O'Shea v. Littleton*, 414 U.S. 488 (1974).  Without adjudicating the merits of Plaintiffs' claims, the Court concludes that pursuant to Supreme Court and Second Circuit caselaw, it must abstain from deciding this action.

## BACKGROUND

I.  **Factual Background**

The COVID-19 pandemic has plagued the United States, millions have been infected, and over one hundred thousand people have died. *See* Complaint (ECF No. 1) at ¶21.  "According to the Center for Disease Control and Prevention, numerous common medical conditions place people at increased risk for severe illness or death from COVID-19, including chronic kidney disease, chronic obstructive pulmonary disease, serious heart conditions, sickle cell disease, obesity, and diabetes." *Id.*  Plaintiffs in this case have hundreds of staff members and clients who suffer from medical vulnerabilities that put them at greater risk of severe illness or death from COVID-19. *Id.* at ¶24.

On March 16, 2020, in response to the COVID-19 crisis, New York State Chief Judge Janet DiFiore and Chief Administrative Judge Lawrence K. Marks restricted all court operations to "essential" matters only and stopped in-person appearances. *See* Defendants' Memorandum of Law in Opposition (ECF No. 25) ("Def. Opp.") at 3; *see also* Declaration of Hon. Tamiko Amaker (ECF No. 27) ("Amaker Decl.") at ¶8.  Defendants allege that the restriction on in-person appearances, although necessary to address the public health concern, also limited critical court functions "including (1) issuing or modifying, and serving on defendants, orders of protection; (2) monitoring non-custodial pre-trial conditions of release; (3) reviewing custody status generally; and (4) conferencing matters." Def. Opp. at 3.  This disruption resulted in "a backlog of 39,000 cases citywide, which encompasses nearly 12,000 unindicted felonies. . . . This represents approximately a 33% increase in pending matters and a 42% increase in unindicted felonies over just four and a half months." Amaker Decl. at ¶9.

For months, Plaintiffs have engaged in calls with the Office of Court Administration ("OCA") to discuss and plan criminal court operations, including the return of in-person appearances. *See* Complaint at ¶33; Amaker Decl. at ¶10.  In preparation for the return of in-person

3

proceedings, OCA hired Dr. Amira Roess, an epidemiological expert, to consult on site-specific COVID-19 protocols as well as the statewide return plans. *See* Amaker Decl. at ¶10.  Plaintiffs retained their own epidemiological experts, CrowdRx, a team of physicians and public safety experts. *See* Complaint at ¶34.  In June, Plaintiffs, Defendants, CrowdRx, and others participated in tours of nine courthouses in anticipation of reopening these and other courthouses for in-person appearances. *See* Complaint at ¶36; Amaker Decl. at ¶13.  On July 6, 2020, the Honorable Tamiko Amaker informed Plaintiffs that limited in-person appearances would commence during the week of July 13, 2020. Amaker Decl. at ¶15.  On July 9, 2020, OCA released its return plan for limited in-court appearances beginning on July 15, 2020. *See* Preliminary Outline of COVID-19 Resumption of In-Person Operations (ECF No. 6-1) ("Return Order").  The abrupt release of the Return Order—only three business days before in-person proceedings were to commence again—caused significant disruption to Plaintiffs, their staff, and their clients. *See* Complaint at ¶¶ 40–46.

Pursuant to the Return Order, up to ten criminal cases per day, per borough, were scheduled for in-person appearances. *See* Return Order at 1.  Judges of the Criminal Court were instructed to select "the most serious unindicted felony matters where there was a bail-eligible offense charged or recidivist defendants with multiple open matters." Amaker Decl. at ¶17.  The Parties dispute how much notice criminal defendants and their attorneys received ahead of in-person hearings. *Compare* Amaker Decl. at ¶19 ("All notices went out at least forty-eight hours ahead of any court appearance."), *with* Complaint at ¶58 ("In many cases thus far, neither the Public Defenders nor the individual counsel of record received notice of a case being selected until less than 48 hours prior to the appearance. In at least one case, a lawyer received less that 24 hours' notice . . . ."). Judges were also instructed to "grant a defendant any and all accommodations requested due to COVID-19-related co-morbidities, risk-factors, or other circumstances, including allowing a

4

virtual appearance or granting an adjournment" and to provide accommodations for individual defense counsel as well. Amaker Decl. at ¶20.[1] Plaintiffs dispute that accommodations are being provided in all cases, and cite examples of staff and clients with disabilities being denied accommodations. *See* Complaint at ¶¶ 58–59; *see also* Plaintiffs' Memorandum of Law in Support of a Temporary Restraining Order (ECF No. 5) ("Pl. Memo") at 6.

Defendants implemented a number of safety measures as part of reopening courthouses, including: staggering cases throughout the day; social distancing markers; the use of face masks, hand sanitizer, and gloves; the use of face shields; the installation of plexiglass; COVID-19 testing of employees; temperature-taking and questioning of all courthouse visitors; daily temperature-taking and self-assessment of judges and non-judicial personnel; limitations on travel for court employees; and increased sanitation and cleaning regimens. *See* Declaration of Justin Barry (ECF No. 23) at ¶8. Moving forward, OCA "plans on providing increased notice of at least one week for in-person appearances" and will provide public notice at least two weeks before increasing the number of in-person appearances beyond the ten-case cap. *See* Amaker Decl. at ¶¶29–30.

II. **Procedural Background**

Plaintiffs, New York City's public defender organizations, brought this suit on July 14, 2020. ECF No. 1.[2] Plaintiffs filed an emergency motion for a Temporary Restraining Order on

---

[1] At the Show Cause Hearing on July 21, 2020, the Court inquired into whether this guidance to judges was documented or formalized in any way. Counsel for Defendants replied that "it has been documented by directions to the judges of the courts, but is not available on the website." July 21, 2020 Order to Show Cause Hearing ("Show Cause Hearing"), Tr. at 22:24–25.

[2] Defendants raise serious questions about Plaintiffs' standing to assert claims on behalf of their clients. *See* Def. Opp. at 21 n.7 ("Plaintiffs cannot rest their claims of relief on the legal rights or interests of third parties. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). Plaintiffs have not shown the relationship with their employees and clients to be 'close' or that there is a hinderance to their employees and clients advancing their own rights under the ADA."). Because the Court concludes that it must abstain in this case, it does not address the issue of standing. *See Disability Rights New York v. New York*, 916 F.3d 129, 131 (2d Cir. 2019) ("As we affirm on abstention grounds, we do not reach the issue of standing raised by Defendants . . . .").

July 16. ECF Nos. 3–12.  That day, the Court denied Plaintiffs' emergency motion but set an expedited schedule for Defendants to show cause why the Court should not issue a preliminary injunction pursuant to FED. R. CIV. P. 65(a) that would halt in-person appearances in New York City Criminal Court pending further proceedings.[3]  Defendants were served on July 17 and filed their response on July 20. ECF Nos. 22–23, 25.  The Court held a Show Cause hearing on July 21 at which it ordered further briefing on the issue of abstention.  Plaintiffs submitted their reply brief on July 22, ECF No. 37, and Defendants submitted their sur-reply on July 24, ECF No. 45.[4]

## LEGAL STANDARD

"A party seeking a preliminary injunction in this circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *County of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004)).  Irreparable harm is "the single most important prerequisite" for relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original).

---

[3] To the extent Plaintiffs' motion did not explicitly request a preliminary injunction but instead only requested a temporary restraining order and "further proceedings," the motion was converted into a motion for a preliminary injunction through the Court's July 16, 2020 Order and the July 21, 2020 Show Cause hearing. *See Hedges v. Obama*, No. 12-CV-331, 2012 WL 1721124, at *1 (S.D.N.Y. May 16, 2012) (converting a motion for a temporary restraining order into a motion for a preliminary injunction during a conference with the court).

[4] The Court pauses to commend the Parties on the exceptional briefs filed in this case despite the accelerated briefing timeline.

**DISCUSSION**

The Court first addresses the "threshold question" of abstention. *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005). Generally, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). This obligation is subject to a few "extraordinary and narrow exceptions," including abstention doctrines. *Colorado River*, 424 U.S. at 813. These exceptions, though narrow in scope, are powerful in effect. Indeed, when applicable, "abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (citation omitted).

I. ***Younger* and *O'Shea* Abstention**

The *Younger* abstention doctrine prohibits federal courts from interfering with ongoing state proceedings, absent a showing a bad faith, harassment, or a patently invalid state statute. *See Younger v. Harris*, 401 U.S. 37 (1971). Specifically, *Younger* precludes federal intrusion into "ongoing state criminal prosecutions," "certain enforcement proceedings," and "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commun., Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citations and quotation marks omitted). *Younger* abstention is "not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York State Com'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citation omitted). "Younger abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that

7

proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198.

In *O'Shea v. Littleton*, the Supreme Court extended *Younger* abstention to situations that require "an ongoing federal audit of state criminal proceedings" because this would "indirectly accomplish the kind of interference that [Younger] and related cases sought to prevent." 414 U.S. 488, 500 (1974). *O'Shea* reflects the Court's concern with allowing federal courts to "supervise and regulate by mandatory injunction the discretion which state court judges may exercise within the limits of the powers vested in them by law" or subject state courts to "the continuing supervision of the District Court." *Id.* at 493. "Like *Younger*, *O'Shea* has also been applied in certain civil contexts involving the operation of state courts." *Disability Rights New York v. New York*, 916 F.3d 129, 134 (2d Cir. 2019) (citing *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006)). *O'Shea* makes clear that "the considerations underlying Younger are still very much at play even when a suit is filed prior to the onset of state proceedings." *Id.*

The Second Circuit recently applied *O'Shea* in two, particularly instructive cases— *Disability Rights* and *Kaufman*. In *Disability Rights*, plaintiffs alleged that some proceedings for appointing legal guardians in New York violated the Constitution, Title II of the ADA, and Section 504 of the Rehabilitation Act. *Id.* at 132. Plaintiffs sought declaratory relief and an injunction that required defendants to take certain actions in these proceedings, including "providing notice, applying a certain burden of proof, and providing substantive and procedural rights equal to those provided in [analogous] proceedings." *Id.* at 132. The Second Circuit concluded that this relief would "effect a continuing, impermissible 'audit' of New York Surrogate's Court proceedings, which would offend the principles of comity and federalism." *Id.* at 136. The Court noted that "[o]ngoing, case-by-case oversight of state courts, like the New York Surrogate's Court, is exactly

8

the sort of interference *O'Shea* seeks to avoid," and that the relief sought would have "federal courts conduct a preemptive review of state court procedure in guardianship proceedings, an area in which states have an especially strong interest." *Id.* Similarly, in *Kaufman*, plaintiff challenged the procedure for assigning appeals among panels of judges in the New York Appellate Division, Second Department. *See* 466 F.3d at 84. Plaintiff sought declaratory relief and an injunction requiring the state legislature to establish a new system of assigning appeals. *Id.* at 85. The Second Circuit concluded that "the relief now sought by Kaufman would be so intrusive in the administration of the New York court system that we must, based on applicable precedent, abstain." *Id.* at 86.

II. **Application**

The threshold question in this case is whether the Court should abstain from adjudicating the merits of Plaintiffs' claims in light of *O'Shea*. "[W]hether *O'Shea* abstention applies is heavily fact-dependent." *Trowbridge v. Cuomo*, 16-CV-3455, 2016 WL 7489098, at *11 (S.D.N.Y. Dec. 21, 2016) (quoting *Miles v. Wesley*, 801 F.3d 1060, 1063 (9th Cir. 2015)). The application of *O'Shea* abstention primarily turns on the relief sought—i.e., the degree of intrusion into the state courts' domain—and the strength of the state interest at stake. The more substantial the requested invasion of the state courts' domain and the stronger the state interest, the more likely the requested relief would violate the principles of comity set forth in *Younger* and *O'Shea*.[5]

---

[5] Defendants contend that the Court should abstain pursuant to *O'Shea* and the third category of *Younger*, which applies to "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78. Because abstention is required pursuant to *O'Shea*, the Court declines to reach the issue of whether abstention is also required pursuant to the third category of *Younger*. *See Disability Rights New York*, 916 F.3d at 135 ("Mindful of the Supreme Court's admonition that the three exceptional categories under *Younger* are to be narrowly construed . . . we do not decide whether this case fits within the third *Younger* category, for we conclude that it falls squarely within *O'Shea*'s abstention framework.") (citation and quotation marks omitted).

The relief requested by Plaintiffs requires significant intrusion into state court operations and proceedings. Plaintiffs request that the Court (1) halt all in-person appearances—both for disabled and non-disabled persons—in criminal courts across New York City; (2) require Defendants to create and implement a policy that provides "sufficient notice, information, and process;" and (3) mandate specific accommodations—e.g., video and telephone hearings—within the policy. *See* Plaintiffs' Reply Memorandum of Law (ECF No. 37) ("Pl. Reply") at 1.[6] At its core, Plaintiffs "seek [] an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal [proceedings]." *O'Shea*, 414 U.S. at 500. The Court would first need to issue an order banning state court judges from scheduling any in-person conferences until a new policy is issued. The scheduling and operation of criminal conferences and hearings is a quintessential "internal procedure" of state courts, and an order dictating if, when, and how state court judges can schedule conferences would violate principles of comity. *See Kaufman*, 466 F.3d at 86 ("[U]nder the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts.") (quoting *Wallace v. Kern*, 520 F.2d 400, 405 (2d Cir. 1975)).

The Court would also have to monitor and supervise the implementation of a new policy for in-person court appearances, and mandate that the policy permit specific accommodations such as video or telephone hearings.[7] This supervision would be continuous and substantial. Plaintiffs,

---

[6] The Court's decision regarding abstention applies with equal force to Plaintiffs' requests for declaratory relief and injunctive relief. *See Disability Rights New York*, 916 F.3d at 137 ("[O]rdinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid.") (quoting *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)).

[7] Plaintiffs have not outlined the range of accommodations they believe would be reasonable under a new, in-person policy. While they note that these accommodations should include video and telephone hearings, they do not confine the list to these specific accommodations. *See* Pl. Reply at 1 (requesting that the "policy permit modifications including, where appropriate, virtual appearances by videoconferencing or telephone."). In response to a question from the Court at the

or any criminal defendants or attorneys dissatisfied with the accommodations provided in their particular proceeding, may "raise compliance issues under the putative federal injunction claiming that the state court's chosen remedy violated the Constitution or the terms of that injunction." *Kaufman*, 466 F.3d at 87. These objections could include the lack of a particular type of virtual appearance (video versus telephone hearing); if, when, and how cases are scheduled or adjourned; and the procedures for entering and social distancing within particular courtrooms.[8] This would amount to case-by-case supervision of the state courts as they slowly return to fully operational. *See Disability Rights New York*, 916 F.3d at 136 ("Ongoing, case-by-case oversight of state courts . . . is exactly the sort of interference *O'Shea* seeks to avoid.") (citation omitted).

The state interests implicated—restarting the state court system and scheduling particular proceedings—are of significant state concern. "[R]estricting the Criminal Court to virtual

---

Show Cause hearing, Plaintiffs' counsel stated: "Your Honor, we're seeking a policy that creates a process that currently doesn't exist. Once that is in place, then plaintiffs would further seek that reasonable accommodations be granted. The range of those accommodations will depend on the particular disabilities that people have. But that said, it seems that at least have phone and video conferencing should be an available option. There must be additional ones." Show Cause Hearing, Tr. at 20:19–25.

[8] During the Show Cause hearing, Plaintiffs' counsel gave an example of a potential, necessary accommodation: "For example, it might be that . . . one courthouse has problems with their HVAC systems that increase the potential significance of spread of the virus in that courthouse. So that person might want to seek an accommodation to be able to appear in different rooms or a different courthouse so they are not exposed to that risk." Show Cause Hearing, Tr. at 21:4–9. This issue, and the attendant health risks, are serious. However, federal courts are required to abstain from this type of supervision of state courts. *See O'Shea*, 414 U.S. at 502 ("Apart from the inherent difficulties in defining the proper standards against which such claims might be measured, and the significant problems of proving noncompliance in individual cases, such a major continuing intrusion of the equitable powers of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized in the decisions previously noted."). If this Court were to issue the injunction requested by Plaintiffs, every criminal defendant or attorney unsatisfied with the accommodation provided in light of a particular HVAC system could come to this Court to enforce the injunction. The Court would then have to issue an Order requiring that the case be heard in a particular room or courthouse, thus involving this Court in the day-to-day operations and scheduling of proceedings in state court.

proceedings only has severely frustrated, if not wholly disrupted, some critical criminal justice functions regarding [] non-custodial defendants—issuing or modifying and serving on defendants orders of protection, monitoring non-custodial pre-trial conditions of release effectively, reviewing custody status generally, and conferencing matters in a matter that promotes their just resolution." Amaker Decl. at ¶9. The disruption has led to "a backlog of 39,000 cases citywide, which encompasses nearly 12,000 unindicted felonies." *Id.* Moreover, the resolution rate for cases heard in-person exceeds the rate achieved by virtual conferences. *Id.* at ¶25. Given that in-person appearances are necessary for certain proceedings—e.g., temporary orders of protection or compliance with the terms and conditions of release—and that in-person appearances promote the efficient resolution of cases, restarting the state criminal system is of paramount state interest. *See SEC v. Shkreli*, No. 15-CV-7175, 2016 WL 1122029, *7 (E.D.N.Y. Mar. 22, 2016) ("[T]he public's interest in the effective enforcement of the criminal law is the paramount public concern.").

Plaintiffs contend that abstention is inappropriate in this case for several reasons. First, Plaintiffs assert that abstention is inappropriate because they challenge a "policy" rather than a particular criminal proceeding, and that their challenge will therefore not "interrupt any criminal case or micro-manage the operation of criminal courts." Pl. Reply at 3. The concern under *Younger* and *O'Shea*, however, is not whether plaintiffs challenge a policy or a particular type of criminal proceeding; instead, the concern is the relief sought by the plaintiffs. *See Disability Rights New York*, 916 F.3d at 136 ("Here, [Plaintiff] seeks a far more substantial invasion of state courts' domain; it would have federal courts conduct preemptive review of state court procedure . . . in an area in which states have an especially strong interest."). In each of the cases Plaintiffs cite to support their proposition, the court noted that the relief sought would generally not interfere with

12

ongoing or future state court proceedings. *See, e.g.*, *Trowbridge*, 2016 WL 7489098 at 11 (declining to abstain because the court "could contemplate fashioning declaratory and injunctive relief that would not necessarily interfere with or restructure the state courts' lawful authority.").[9] The relief requested in this case squarely impacts state criminal proceedings. The Court would disrupt ongoing and future criminal proceedings by dictating if, when, and how they could take place; by temporarily banning proceedings that have to occur in-person; and by requiring state courts to adopt particular policies and accommodations for future proceedings. This relief would then need to be supervised and enforced by this Court. This degree of intrusion constitutes an impermissible, "ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S. at 500.

---

[9] *See also Walker v. City of Calhoun*, 901 F.3d 1245, 1255 (11th Cir. 2018), *cert. denied sub nom. Walker v. City of Calhoun*, 139 S. Ct. 1446 (2019) (declining to abstain because "[Plaintiff] does not ask for the sort of pervasive federal court supervision of State criminal proceedings that was at issue in *O'Shea*."); *Gernstein v. Pugh*, 420 U.S. 103, 108 ("The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution."); *O'Donnell v. Harris County*, 892 F.3d 147, 156–57 (5th Cir. 2018) ("The injunction sought by [Plaintiff] seeks to impose 'nondiscretionary procedural safeguard[s],' which will not require federal intrusion into pre-trial decisions on a case-by-case basis. . . . Such relief does not implicate our concerns for comity and federalism.") (citation and quotation marks omitted); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 791 (9th Cir. 2014) ("To determine whether the Ventura County Superior Court is making complaints available on the day they are filed, a federal court would not need to engage in the sort of intensive, context-specific legal inquiry that would be necessary to determine whether counsel's performance was constitutionally adequate. There is little risk that the federal courts would need to 'examin[e] the administration of a substantial number of individual cases' to provide the requested relief.") (citations omitted); *Stewart v. Abraham*, 275 F.3d 220, 225 (3d Cir. 2001) ("In this case, the equitable relief requested is not aimed at state prosecutions, but at the legality of the re-arrest policy and the pretrial detention of a class of criminal defendants."); *Los Angeles County Bar. Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("The Bar Association has chosen to frame its challenge as, in effect, a facial one, citing average court delays rather than the delay in any specific case as unconstitutional. . . . We therefore conclude, although not without some trepidation, that this case is a proper one for the exercise of our declaratory jurisdiction."); *Marshall v. Green County*, No. 05-CV-130, 2006 WL 335829, at *3 (W.D. Ky. Feb. 13, 2006) ("Any relief this Court may afford the Plaintiff does not at all relate to the ultimate disposition of his state criminal case, and even if such relief did relate to his state prosecution, it would not in any way hinder the state prosecution."). These cases indicate that the degree of intrusion sought by the relief is the principal concern for purposes for abstention.

Next, Plaintiffs assert that abstention in this case "threatens to close the courthouse doors to federal disability rights claims involving courthouse access." Pl. Reply at 5. Such a result would indeed be untenable, but it does not follow from abstention in this case.[10] Again, the principal considerations are the relief necessary to remedy the alleged violation and the state interest implicated. In cases such as *Tennessee v. Lane*, 541 U.S. 509 (2004)—in which plaintiffs were disabled and could not access upper floors of the federal courthouse in Tennessee—the relief requested did not change the nature of the criminal proceedings and hearings in state court, and any state interest implicated was minor. On the other hand, relief in this case would close the courthouse doors to all persons—both disabled and non-disabled—and would implicate the significant state interest in restarting the state criminal system and scheduling particular proceedings. Moreover, the oversight and supervision required to implement a new policy would be more substantial and extend for a longer time period in this case. Thus, while federal courts maintain latitude to enforce federal disability rights in state courthouses, this latitude is restricted in cases like this, where the requested relief is particularly intrusive into the day-to-day procedures of the state courts, where the relief requires ongoing supervision, and where substantial state interests are at stake.

Finally, Plaintiffs assert that the relief sought in the principal cases cited by Defendants— including *Disability Rights*, *Kaufman*, and *Fishman*—is distinguishable from the relief sought in this case because those cases involved "supplant[ing] a state legislative scheme," "monitoring individual proceedings," or "*de facto* collateral attack[s] on adverse decisions made in [] individual

---

[10] Defendants concede that regardless of abstention in this case, federal courts are still able to exercise jurisdiction to enforce federal disability rights involving state courthouse access. *See* Def. Sur-Reply at 6 ("Of course, the federal courts may entertain claims that courthouse buildings (and therefore the services in them), because of architectural barriers, are physically inaccessible to the disabled.").

state court cases." Pl. Reply at 7–8.  Plaintiffs contend that in this case, "[t]here is no risk of this court being placed in the role of second-guessing the judgments of individual criminal court judges," *id.* at 8, and that the requested relief "would merely temporarily restore the status quo of operations in criminal courts of a few days ago," *id.* at 4.  However, the requested relief goes further.  Plaintiffs do not ask this Court to simply require the New York City Criminal Court to return to virtual proceedings.  Instead, this Court would mandate a new policy for the state courts, require specific provisions in that policy, and then supervise its implementations.  This supervision would include challenges to accommodations provided in individual proceedings. *See Kaufman*, 466 F.3d at 87 ("[A]ny remedy fashioned by the state would then be subject to future challenges in the district court.").  This relief—in scope and in time—is analogous to the declaratory and injunctive relief requested in *Disability Rights*, *Kaufman*, and *Fishman*. *See Disability Rights New York*, 916 F.3d at 134–37 (abstaining from requiring state courts to adopt certain procedures in guardianship proceedings); *Kaufman*, 466 F.3d at 86–88 (abstaining from requiring state courts to establish a new system for assigning appeals); *Fishman*, 2020 WL 1082560 at 11–12 (abstaining from requiring Family Court to hold hearings at particular times, provide plaintiff with specific records, adopt procedures for transcription proceedings, and transfer certain authorities from state judges to court bureaucrats); *see also Wallace*, 520 F.2d at 403–09 (abstaining from requiring new bail procedures in New York State courts).

## CONCLUSION

"A federal court should not intervene to establish the basis for future intervention that would be [] intrusive and unworkable." *O'Shea*, 414 U.S. at 500.  To intervene in such a situation would disrupt "[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Id*. (citation omitted).  For the reasons set forth


above, the Court abstains from adjudicating this action. Plaintiffs' motion for a preliminary injunction is **DENIED** and the case is **DISMISSED**. The Clerk is respectfully directed to close this case.

**SO ORDERED.**

**Dated:**   **New York, New York**
            **July 28, 2020**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**